TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-03-00666-CR




Manuel Gaspar Martinez, Appellant

v.

The State of Texas, Appellee





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NO. 9034093, HONORABLE BOB PERKINS, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N


                        A jury found Manuel Martinez guilty of (1) aggravated assault with a deadly weapon
and (2) injury to a child. See Tex. Pen. Code Ann. § 22.02(a)(2) (West Supp. 2004-05),
§ 22.04(a)(3) (West 2003). Martinez pleaded true to the enhancement allegations, and the jury
assessed punishment of 99 years’ imprisonment on the first count and 20 years’ on the second count.
                        On appeal, Martinez contends that (1) the evidence presented at trial was factually
insufficient to support the verdict, (2) the trial court abused its discretion by allowing a witness to
be improperly impeached with an alleged “extraneous bad act,” and (3) the trial court abused its
discretion by allowing a lay witness to testify as to legal conclusions regarding the competency of
a child witness to testify. For the following reasons, we affirm the conviction.
 
BACKGROUND
                        Lisa Sanchez and her two-year-old daughter, S.S., came to live with Martinez in the
summer of 2002. Sanchez testified that Martinez was mean to S.S. throughout the time they lived
together; however, the allegations of abuse centered around Thanksgiving 2002.
                        Sanchez, Martinez, and S.S. spent Thanksgiving at the home of Martinez’s sister. 
Sanchez testified that Martinez was angry with her because he felt that she was “checking out” his
nephew. Her testimony indicated that Martinez directed his anger towards S.S. when they arrived
home that evening. Sanchez testified that, over the course of the holiday weekend, Martinez 
repeatedly struck S.S. on her torso, face, arm, and bottom using his hand, fist, and a belt. These
physical attacks were accompanied by yelling, screaming, and calling S.S. various obscenities. She
testified that on Friday, Martinez put S.S. in the corner for several hours and struck her with his hand
or belt if she moved in the slightest; that on Saturday, Martinez again placed S.S. in the corner for
four or five hours and struck her on the lower back and bottom with his hand or belt until her bottom
was red and swollen; and that on Sunday, the beatings and verbal abuse continued.
                        By Monday, December 2, Sanchez determined that she had to leave Martinez’s house
with her daughter and call the police. Martinez refused to let her use the telephone and would not
allow Sanchez to take S.S. with her. She left the home and called the police from a pay phone on
the corner. During the call, an upset Sanchez indicated that Martinez was keeping her from her child
and that she was in need of police assistance in order to get her child back. During the initial 911
call, Sanchez did not mention any physical abuse of her child or herself.
                        When Corporal Randall Milstead of the Austin Police Department responded to
Sanchez’s call, he found her outside a grocery store about a block from Martinez’s home. Corporal
Milstead testified that when he arrived on the scene, Sanchez was visibly upset and crying. It was
during this first meeting that Sanchez told the officer that Martinez had been beating her daughter
and that she wanted to get her daughter back. Corporal Milstead left Sanchez at his vehicle and
proceeded with another officer to Martinez’s home.
                        After initially resisting, Martinez’s father ultimately allowed the officers to enter. By
this time, Martinez had left the premises. Corporal Milstead found the victim curled up on the floor
in one of the bedrooms. He picked her up and brought her to her mother. Corporal Milstead testified
that S.S. seemed happy to see her mother and did not appear to be afraid of her.
                        EMS then arrived to administer emergency medical care to S.S. and to transport her
to the hospital. The paramedic who examined the child found that she had widespread bruising on
her eyes, cheeks, legs, and arms and had hair loss. He testified that in his opinion these injuries were
consistent with Sanchez’s report of abuse. At the Children’s Hospital emergency room, the child
was treated by Dr. George Edwards who diagnosed her as suffering from child abuse (non-accidental
child trauma) and alopecia (baldness). Dr. Edwards testified at trial that the injuries he observed and
treated were consistent with the history relayed to him by Sanchez and that the injuries were
consistent with the child having been struck with hands, a belt, and possibly other blunt objects over
a period of several days. He testified that the hair loss was likely caused by S.S. being forcibly lifted
by her hair, and that it was highly unlikely that any sort of malnutrition, head lice, or head lice
treatment would have caused such localized hair loss.
                        The Austin Police Department assigned Detective Martin Taylor to the case. His
investigation included a videotaped interview with the child, statements from Martinez’s father, the
child’s medical records, and videotaped interviews with Martinez’s two children. Detective Taylor
concluded that Martinez was the cause of the child’s injuries. This conclusion was based on his
investigation, including the child’s testimony, which was consistent with Sanchez’s allegations of
abuse. In his report, Detective Taylor noted that the child did not fear Sanchez. No forensic
evidence, such as fingerprints or DNA from the belt, was collected. Neither party requested such
evidence or testing.
                        Witnesses for Martinez, primarily family members, all testified that they had never
seen Martinez strike or unreasonably discipline the child and that they did not believe Sanchez to
be a truthful person. Several of these witnesses testified that they had seen Sanchez pull, shake, or
strike her daughter on a number of occasions and that Sanchez often left the child at home in the
evenings while going out to clubs. Some family members testified that Sanchez did not feed her
daughter, which caused them to question the health of the child. Several of these witnesses
acknowledged that they had concerns for the safety of the child and had observed bruises and scrapes
on her body; however, none had contacted the police or child protective services regarding those
concerns. All of the witnesses, with the exception of Martinez’s father, testified that they were not
in Martinez’s home during Thanksgiving weekend, when the abuse occurred. Martinez’s father was
present but testified that he did not hear or witness any of the conduct that Sanchez testified to
because he was in his own room.
 
DISCUSSION
Factual Sufficiency
                        In his first issue, Martinez contends that the evidence is factually insufficient to
support his conviction. In a factual sufficiency review, all the evidence is considered equally,
including the testimony of defense witnesses and the existence of alternative hypotheses. Orona v.
State, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no writ.). Due deference must be accorded
the fact finder’s determinations, particularly those concerning the weight and credibility of the
evidence, but the reviewing court may disagree with the result when necessary to prevent a manifest
injustice. Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). The evidence will be deemed
factually insufficient to sustain the conviction if the proof of guilt is too weak or if the contrary
evidence is too strong to support a finding of guilt beyond a reasonable doubt. Zuniga v. State, 144
S.W.3d 477, 484-85 (Tex. Crim. App. 2004); see Johnson, 23 S.W.3d at 11. Appellate courts are
not free to set aside a jury verdict merely because the reviewing judges feel that a different result is
more reasonable. Id. at 29-30. If an appellate court determines that evidence is factually insufficient,
it may not substitute its own ruling to render judgment but must remand for a new trial. Clewis v.
State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).
                        To support Martinez’s conviction for aggravated assault, the evidence must support
a finding that he knowingly or intentionally caused bodily injury to S.S. and exhibited a deadly
weapon during the course of such conduct. Tex. Pen. Code Ann. § 22.02(a)(2) (West Supp. 2004-05); Lane v. State, 151 S.W.3d 188 (Tex. Crim. App. 2004). To support his conviction for injury
to a child, the evidence must support a finding that he knowingly or intentionally caused bodily
injury to S.S., whose status as a child was undisputed. Tex. Pen. Code Ann. § 22.04(a)(3) (West
2003).
                        Martinez argues that the State’s case rests solely on the testimony of Lisa Sanchez. 
He argues that his witnesses, through their testimony, discredited Sanchez to such an extent that the
jury could not have based its verdict on her testimony and that any remaining evidence to support
the verdict was wholly insufficient. We disagree.
                        It is well settled that when reviewing fact questions, deference is given to the jury’s
determinations involving the credibility and demeanor of witnesses. Zuniga, 144 S.W.3d at 481;
Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Sanchez and other State witnesses
offered testimony supporting the theory that Martinez knowingly or intentionally caused bodily
injury to S.S. and that, under the circumstances, his hands qualified as deadly weapons. Martinez’s 
witnesses characterized Sanchez as untruthful and suggested that she was in fact the person who had
caused the bodily injury to her daughter. The jury believed the State’s evidence, credited its theory,
and did not find Martinez’s evidence convincing or credible. It was within the realm of the jury to
make such a determination, especially in a case with very little physical or direct evidence. 
Therefore, we cannot substitute our judgment regarding the sufficiency of the evidence for that of
the jury. See Clewis, 922 S.W.2d at 133. We overrule Martinez’s first point of error.

Improper Impeachment
                        In his second point of error, Martinez contends that the trial court allowed defense
witness Oscar Martinez to be improperly impeached upon cross-examination with an alleged
“extraneous bad act.” Martinez argues that the trial court abused its discretion in allowing the State,
over various objections, to question Oscar Martinez regarding an alleged phone call to a Sandra
Lazoria. The State alleged that during the phone call, Oscar Martinez told Lazoria not to speak to
the police or otherwise cooperate with the investigation into the matter of S.S.’s abuse. Although
the record shows that counsel for Martinez made several objections to the State’s line of questioning,
he did not obtain an adverse ruling on his objection to using “extraneous bad acts” to improperly
impeach. He thus failed to preserve error.
                        Even had the error been preserved, the trial court did not abuse its discretion by
allowing the questions. The trial court’s decision to admit evidence is reviewed under an abuse of
discretion standard. An appellate court may reverse a trial court’s decision for an abuse of discretion
only when it appears that the court applied an erroneous legal standard or when no reasonable view
of the record could support the trial court’s conclusion under the correct law and the facts viewed
in the light most favorable to its legal conclusion. Dubose v. State, 915 S.W.2d 493, 497-98 (Tex.
Crim. App. 1996). Stated another way, a ruling will not be reversed unless it falls outside the zone
of reasonable disagreement. Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).
                        Generally, the use of specific instances of conduct in order to impeach a witness is
prohibited. Tex. R. Evid. 608(b). The credibility of a witness may be attacked, however, by
evidence that the witness is slanting his testimony against or in favor of a party as a result of personal
interest or bias in the cause. Tex. R. Evid. 613(b). The court of criminal appeals specifically allows
for legitimate exploration of those matters indicating the friendship or leaning of witnesses, and
those associated with them, toward any party or issue involved. Hinojosa v. State, 788 S.W.2d 594,
600 (Tex. App.—Corpus Christi 1990, writ. ref’d) (citing Gunn v. State, 252 S.W. 172, 178 (Tex.
Crim. App. 1922)). To establish interest, bias, or motive, the court of criminal appeals has held that
one must first establish a “specific connection between the witness testimony and the cause,
disclosing an actual bias or motive.” Willingham v. State, 897 S.W.2d 351, 358 (Tex. Crim. App.
1995). This nexus must be demonstrated by laying a proper foundation. Id. This foundation is laid
by first informing the witness of the circumstances supporting a claim of bias or interest, and then
giving the witness an opportunity to explain or deny such circumstances. Id; see Tex. R. Evid.
613(b).
                        Oscar Martinez is appellant’s brother. Because this close relationship had been
previously discussed and established, the jury could potentially infer bias or motivation to slant
testimony. During voir dire examination of the witness, the State made clear that the purpose of
questioning the witness about the alleged telephone call was to explore the possible bias of Oscar
Martinez. During Oscar Martinez’s cross-examination, the specific instance was clearly described
for him; he had an opportunity to explain or deny, as required by the rule; and he did deny the
specific instance. Because contrary testimony was never offered, the witness was never actually
impeached on the basis of this alleged specific instance of conduct. Therefore, there was no
improper impeachment. We hold that Martinez did not preserve this error for appeal, and if he had,
the trial court did not abuse its discretion in allowing the line of testimony on the grounds that it was
an attempt to show the witness’s bias towards Martinez. We overrule Martinez’s second point of
error.
Improper Admission of Lay Witness Testimony
                        Martinez’s final point of error is that the trial court erred in admitting the lay witness
testimony of Detective Taylor. Martinez argues that Detective Taylor’s testimony called for a legal
conclusion and therefore could have been offered only by an expert witness, which Taylor was not. 
Specifically, Martinez objected to Detective Taylor being asked about the competency of S.S. to
testify. The trial court allowed Detective Taylor to answer questions regarding the competency of
child witnesses in general.
                        The admissibility of evidence is within the discretion of the trial court, and we will
not reverse absent an abuse of discretion. Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App.
2001). It is undisputed that Detective Taylor was testifying as a lay witness. Therefore, his
testimony under the rules was to be limited to those opinions or inferences which are (a) rationally
based on the perceptions of the witness, and (b) helpful to a clear understanding of the witness’s
testimony or the determination of a fact in issue. Tex. R. Evid. 701. Martinez claims that Detective
Taylor’s testimony regarding the competency of child witnesses to testify was inadmissible under
this rule because (1) the fact that the victim did not testify was never a “fact in issue,” and (2) there
were no ambiguities in the witness’s testimony that this testimony clarified for the jury.
                        However, Martinez clearly made S.S.’s failure to testify a fact in issue. While
questioning Detective Taylor, Martinez repeatedly made reference to the fact that the victim had not
testified at trial, and noted that “we’ll get to that,” which opened the door to Detective Taylor’s
testimony on the subject. When defense counsel pursues a subject that would ordinarily be outside
the realm of proper comment by the prosecutor, the defendant has opened the door and creates a right
of reply for the State. Credille v. State, 925 S.W.2d 112, 116 (Tex. App.—Houston [14th Dist.]
1996, writ. ref’d). It has been recognized that the “rule of optional completeness” addresses such
situations where a party has “opened the door.” Tex. R. Evid. 107; Fuentes v. State, 991 S.W.2d
267, 279 (Tex. Crim. App. 1999). This rule permits the introduction of otherwise inadmissible
evidence when that evidence is necessary to fully and fairly explain a matter “opened up” by the
adverse party, for the purpose of reducing the possibility that the jury might receive a false
impression from hearing only a part of some act, conversation, or writing. Credille, 925 S.W.2d at
116. At trial, Martinez opened the door to the question of why the victim did not testify, and
Detective Taylor’s testimony regarding the competency of child witnesses was appropriate to clarify
the issue.
                        Detective Taylor’s testimony was also admissible under Rule 701. A lay witness’s
testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own
experiences or observations. Osbourn v. State, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002) (citing
to Fairow v. State, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997)). The same court pointed out that,
as a general rule, observations that do not require significant expertise to interpret and that are not
based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met. 
Id. at 537. This is true even when the witness has experience or training. Id. It is clear from the trial
court record that Detective Taylor had personal experience in the child abuse unit with child
witnesses and their ability or inability to testify. His testimony was based on inferences he had made
as a result of his personal experience and observations working in that unit and was not based on
scientific theory. Common sense also dictates that a three-year-old child may not be fit to testify. 
 Therefore, it was not an abuse of discretion for the trial court to admit Detective Taylor’s testimony. 
We overrule Martinez’s third point of error
                        Having overruled all of Martinez’s points of error, we affirm the trial court’s
judgment.
 
 
                                                                                                                                                             
                                                                        Bea Ann Smith, Justice
Before Chief Justice Law, Justices B. A. Smith and Pemberton
Affirmed
Filed: March 10, 2005
Do Not Publish